OPINION
{¶ 1} Defendant-appellant, Terry L. Manns, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of unlawful conduct with a minor, in violation of R.C. 2907.04, and sentencing him to one year in prison. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On November 7, 2003, defendant was indicted by the Franklin County Grand Jury on one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04. The indictment and the subsequent bill of particulars alleged that defendant engaged in vaginal intercourse with a minor female, knowing that she was 13 years of age or older but less than 16 years of age, or being reckless in that regard. It was further alleged that defendant was 10 or more years older than the victim.
 {¶ 3} In January 2004, defendant was tried before a jury in the Franklin County Court of Common Pleas. The evidence at trial indicated as follows.
 {¶ 4} The victim, who was born July 2, 1988, testified at trial. In September 2003, the victim was living with her mother in Troy, Ohio. In late September or the beginning of October 2003, the victim left Troy and traveled to Columbus, Ohio, without her mother's permission. The mother testified that upon discovering that her daughter was not in her bedroom as the mother had expected and that her bedroom window's screen was cut, she called the police and filed a missing person's report.
 {¶ 5} Once in Columbus, the victim initially lived with a friend named Kenny. After about five days, the victim left Kenny's apartment and moved in with persons named Christine and Don, who lived in the same apartment complex as Kenny. The victim lived with them for a couple weeks, until she met defendant.
 {¶ 6} The victim stated that she was walking on Front Street in downtown Columbus toward Christine's residence, after shopping at City Center, when she began talking with defendant. According to the victim, defendant told her that he was 45 years old. The victim told defendant that she was 18 years old, and she also provided a fictitious name. The victim testified that she did not tell defendant her real name because she did not want to get caught for running away from home.
 {¶ 7} At some point during the day they met, defendant asked the victim if she had any identification with her. The victim had cigarettes in her possession when she met defendant. At trial, the prosecutor asked the victim, "And after seeing the cigarettes, is that when the defendant asked you if you had ID with you," and the victim responded, "Yeah, I think so." (Tr. 28.) The victim testified that she told defendant that her identification was "at [her] mom's." (Tr. 41.) Subsequently, the victim moved out of Christine and Don's residence and then lived with defendant. The victim testified that she and defendant engaged in sexual intercourse "a couple" times. (Tr. 30.)
 {¶ 8} On October 22, 2003, Columbus Police Officer Kyle McKeon and his partner were on bicycle patrol when they encountered the victim walking on East 23rd Avenue. The officers observed her speaking to someone in a car. The driver of the car immediately departed after seeing the police. The officers stopped the victim to speak with her. Officer McKeon described the victim as "very young and very disoriented, kind of confused." (Tr. 54-55.) The officers asked the victim to state her name and birth date, but she "had a real hard time identifying herself * * * she provided a variety of names and birthdays." (Tr. 55.) When asked at trial whether the victim stated her age, Officer McKeon stated, "[s]he claimed she was eighteen years old." Id.
 {¶ 9} While the officers were talking with the victim, defendant approached the officers. Defendant identified himself as her boyfriend and expressed concern as to why the officers were talking with her. The victim was taken to a police precinct house, where her identity and age were determined through the use of "LEADS." Upon determination by the police that the victim was 15 years old, Officer McKeon and his partner returned to the location where they found the victim in order to look for defendant. On their way to the scene, the officers encountered defendant, placed him in a police cruiser, and drove him to his home. According to Officer McKeon, he informed defendant that they were trying to identify the victim, and in response, defendant stated, "I also asked for her identification." (Tr. 58.)
 {¶ 10} At some point, the victim and defendant were placed in separate police cruisers. Columbus Police Officer Don McCray was asked at trial whether defendant stated anything regarding the victim while he was in Officer McCray's police cruiser. Officer McCray testified that defendant "asked a couple times what was going on. He made a statement about he had asked her if he was going to see [her] on a milk carton," and that defendant was laughing as he made this statement. (Tr. 67.)
 {¶ 11} Columbus Police Detective Lisa McKissick interviewed both the victim and defendant. The victim informed Detective McKissick that she engaged in sexual activity with defendant and that the sex was consensual. Detective McKissick told defendant that the victim informed her that she had been raped by him. Defendant denied the rape allegation, asserting that the sex was consensual. Regarding the victim's identification, the following colloquy took place at trial between the prosecutor and Detective McKissick:
Q. And did the defendant ever indicate that he asked [the victim] for any type of identification?
A. Yes, he did. He said when he met her two weeks ago prior to [the victim] being brought to juvenile bureau that he had asked her for ID the moment he met her.
Q. Did Mr. Manns indicate whether that was a common practice of his to ask girls how old they were or that they had ID with them?
A. I remembered him saying — I thought that was unusual that that would be something that you would just ask someone outright. And I remember him saying, well I asked for ID.
(Tr. 71.) Detective McKissick testified that defendant admitted that he always asks for identification when he meets young girls.
 {¶ 12} According to Detective McKissick, defendant was surprised to learn that the victim "had a warrant out for her." Also, defendant informed Detective McKissick that he had developed a fondness for the victim, was concerned about her welfare, and was protective of her. (Tr. 77.) The parties in this case stipulated that the victim wrote defendant a letter, and defendant subsequently wrote multiple letters to the victim. The victim's mother testified that she intercepted three letters sent from defendant to the victim. Two of these letters, in redacted form, were admitted into evidence. (State's Exhibits 2 and 4.)
 {¶ 13} In one letter, defendant wrote the following:
My dearest [the victim]:
* * *
When she answered the phone, she said, how old are you? I told her 17, my name was Jhonny [sic]. * * * I wrote you a hot letter but can't take any chances with someone else getting your mail. I'm talking to [sic] much as it is.
* * *
Well I don't know if I'll send this letter out because if it gets in the wrong hands my ass is trash. * * * One must know or act like they know when other people are involved. [L]oose lips sink ships. Sometimes its better to do things alone because one never tell on self. Other than a fool like me. I admitted making love to you because I believed that I was making love to a 18 year old. But that does not change the facts or the law. * * * I should have lied to save myself. If I ever mail these letters you must destroy them or hide them real good. Take my name off them or something. You got to protect me at all cost. * * * Girl if she gets one of these letters and use it to fry my goose, I'm done. Can you save me baby? How? We need to convince the courts that you convinced me to believe that you were 18 somehow. Other than that I'm in trouble for fucking a minor. So how did you convince me other than being so dam [sic] good?
(State's Exhibit 4.) Defendant further wrote in this letter:
Putting my life and my freedom in your hands again. Hey I just came up with a crazy ass idea. If your momma let us get married, I can beat the case because then we'll be legal. Isn't that something, you and I for life or just long enough to get out of trouble.
* * *
[If you] don't agree, I'll understand, its my fault for not being more carefull [sic] and more wise.
Id.
 {¶ 14} In the other letter admitted at trial, defendant wrote:
You know what? My letters to you must be destroyed after you read them because they a [sic] dangerous. Just like mission impossible. This letter will not be sent it will only be read over the phone. All it takes is the wrong person to see a letter like this from me to you.
(State's Exhibit 2.)
 {¶ 15} At trial, defendant's counsel made a motion for acquittal, pursuant to Crim.R. 29, on the basis that there was insufficient evidence to convict defendant. The trial court overruled this motion. The jury found defendant guilty of unlawful sexual conduct with a minor, as charged in the indictment. On January 20, 2004, the trial court entered judgment, convicting defendant of unlawful conduct with a minor and sentencing defendant to one year in prison. Defendant appeals from this judgment and assigns the following errors:
First Assignment of Error:
The evidence was legally insufficient to support appellant's conviction, insofar as the state failed to prove he knew or was reckless with respect to knowledge the victim was between the ages of thirteen and sixteen.
Second Assignment of Error:
The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
Third Assignment of Error:
Conviction was against the manifest weight of the evidence.
 {¶ 16} In his first assignment of error, defendant asserts that the evidence was legally insufficient to support his conviction. A conviction that is based on insufficient evidence constitutes a denial of due process. State v. Thompkins (1997),78 Ohio St.3d 380, 386; see State v. Scott, 101 Ohio St.3d 31,2004-Ohio-10, at ¶ 31. In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. Thompkins, at 386.
 {¶ 17} Defendant was convicted of violating R.C. 2907.04, which provides, in relevant part, as follows:
(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.
* * *
(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.
 {¶ 18} Regarding the elements of the offense in this case, the only genuine issue in this appeal is whether there was sufficient evidence to prove that defendant possessed the requisite mens rea for a violation of R.C. 2907.04. Therefore, the issue is whether there was legally sufficient evidence presented at trial to prove that defendant knew that the victim was 13 years of age or older but less than 16 years of age, or was reckless in that regard. Although defendant may not have known that the victim was 15 years old when he engaged in sexual intercourse with her, the evidence supports a finding that he was reckless in this regard. R.C. 2901.22(C) defines "reckless" as follows:
A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 19} Construing the evidence at trial in a light most favorable to the state, we find that defendant's conviction was based upon legally sufficient evidence. The evidence at trial supports a finding that defendant acted with heedless indifference to the consequences, and perversely disregarded a known risk.
 {¶ 20} When defendant first met the victim, he asked for her identification, as he apparently does whenever he meets young girls. Although the victim testified that defendant asked her if she had identification after he saw her in possession of cigarettes, there was also testimony from Detective McKissick that defendant indicated that he always asks for identification when he meets young girls. Therefore, a reasonable inference can be drawn that defendant asked for the victim's identification because she appeared young, not because she possessed cigarettes.
 {¶ 21} Although defendant arguably took a cautionary measure, initially, by asking for the victim's identification, it was still reasonable to find him reckless in this case. Stated differently, the fact that defendant initially asked for the victim's identification, as a possible precautionary measure, does not necessarily indicate defendant's lack of recklessness in this case, especially considering the fact that the victim never produced the requested identification to show defendant.[1]
 {¶ 22} There was testimony at trial indicating that defendant admitted to asking the victim whether he would see her on a milk carton. Defendant's comment could reasonably be interpreted as demonstrating his recognition of the victim's young age. Additionally, according to Officer McKeon, when he first saw the victim, she appeared "very young."
 {¶ 23} Moreover, we also recognize that because the victim testified at trial, the jury had the opportunity to observe her appearance at the same age, 15 years old, as when the alleged sexual activity occurred.[2]
 {¶ 24} Based on the foregoing, we conclude that sufficient evidence at trial supported the finding that defendant acted recklessly regarding the victim's age when he engaged in sexual conduct with the victim. Accordingly, we overrule defendant's first assignment of error.
 {¶ 25} In his second assignment of error, defendant asserts that the trial court erroneously overruled defendant's motion for acquittal pursuant to Crim.R. 29, which provides:
The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
 {¶ 26} In State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, the Supreme Court of Ohio held, "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 27} Considering our analysis with respect to defendant's first assignment of error, we conclude that the trial court did not err when it overruled defendant's motion for acquittal pursuant to Crim.R. 29. The state presented sufficient evidence to prove beyond a reasonable doubt all the elements of the crime for which defendant was charged. Therefore, we overrule defendant's second assignment of error.
 {¶ 28} By his third assignment of error, defendant asserts that the conviction was against the manifest weight of the evidence. Regarding the weight of evidence, the Supreme Court of Ohio, in Thompkins, at 387, stated as follows:
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief."
(Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 29} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 30} Defendant argues that his "candor as to the nature of the relationship and his cooperation with the police should be given great credit. So should the absence of any suggestion appellant sought to conceal the relationship, or that he involved [the victim] in unlawful activity except as related to his mistaken belief she was of age." (Defendant's brief at 15.) This evidence, regarding how defendant portrayed the relationship to others, did not necessarily indicate a lack of the requisite mental state, even though it may have indicated defendant's willingness to be open about his relationship with the victim and/or his propensity to cooperate with authorities.
 {¶ 31} After our careful review of the record, we do not find that the jury "lost its way" when it found defendant guilty of unlawful sexual conduct with a minor. Certainly, this is not an "exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 32} Under defendant's third assignment of error, he also appears to argue that the trial court improperly failed to instruct the jury on the negligence standard. Even though the jury inquired as to the definition of the negligence standard, we find no error in the trial court's decision to not inform the jury as to negligence. With respect to whether defendant possessed the requisite mental state for a violation of R.C.2907.04, the issue was whether the defendant had knowledge of the victim's age, or was reckless in that regard, not whether defendant was negligent in that regard. Therefore, we find defendant's argument concerning whether the trial court should have instructed the jury on negligence to be without merit.
 {¶ 33} Having concluded that defendant's conviction was not against the manifest weight of the evidence, and having found his jury instruction argument to be without merit, we accordingly overrule defendant's third assignment of error.
 {¶ 34} In sum, we find that defendant's conviction for unlawful sexual conduct with a minor was supported by legally sufficient evidence, was not against the manifest weight of the evidence, and that the trial court did not err in overruling defendant's Crim.R. 29 motion.
 {¶ 35} For the foregoing reasons, all three of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Klatt, JJ., concur.
[1] Obviously, if the victim had any form of valid identification that indicated her age or birth date, it would have shown her to be only 15 years old.
[2] The trial in this case took place within four months of the alleged sexual activity between defendant and the victim.